* Motion for rehearing denied, with $25 costs, on September 14, 1948.
This matter was brought before the court upon a motion by the plaintiff to confirm a certain award of arbitrators made pursuant to an arbitration agreement between the plaintiff and the defendant. The defendant, by its attorney, objected to the confirmation of the award. The motions were heard on the 13th day of June, 1947, and from the order confirming the award the Yahr-Lange Liquor, Inc., appeals. The material facts are as follows:
On the 25th day of February, 1946, the plaintiff and the defendant entered into a bargaining agreement under the following circumstances: Yahr-Lange Drug Company, was for many years prior to July 1, 1945, engaged in the wholesale drug and liquor business. The Yahr-Lange Liquor, *Page 61 
Inc., did not come into existence until the latter part of June, 1945. The Yahr-Lange Liquor, Inc., hereafter referred to as "Liquor Company," was organized by the Yahr-Lange Drug Company, hereafter known as "Drug Company," for the purpose of taking over the liquor business theretofore conducted by the Drug Company. At the time of organization the majority of the shares of the capital stock of the Liquor Company were owned by the Drug Company. The Drug Company sold these shares on April 30, 1946, to R. K. Donovan and associates. The agreement entered into by the Liquor Company and the union on February 25, 1946, was a part of the arrangement by which the Liquor Company business was set up and organized. The agreement of February 25, 1946, was an instrument covering twelve typewritten pages and dealt with many matters not involved in this controversy. The respondents were salesmen, or representatives of salesmen, who had been with the Drug Company and whose employment was continued after the organization of the Liquor Company as employees of the Liquor Company. One employee testified:
"I have been employed by Yahr-Lange all the time. I don't know of any change which occurred in the operation of the business on or about July, 1945, only the change in the liquor department moved in a location on Seeboth street. The manner of operation or the policy did not change in any way after July, 1945. We had the same management. Tile same employees so far as I know."
Paragraph 14 provided:
"It is understood and agreed that in the event of a dispute between the employer and the union, before any strike on the part of the union or any lockout on the part of the employer shall be placed into effect, such dispute shall be submitted to arbitration in the manner set forth in paragraph 4 (b) of this agreement." *Page 62 
Paragraph 4 (b) is as follows:
"One arbitrator shall be selected by the employer and one by the union, and the two arbitrators thus selected shall jointly agree upon a third. If such third arbitrator cannot be agreed upon then application may be made to the Wisconsin employment relations board for the appointment of a third impartial arbitrator."
The following paragraphs provide for notices and the method of setting up the board of arbitration.
Paragraph 15 provides:
"It is understood and agreed that if a dispute shall arise with respect to any rights or liabilities claimed under this agreement for which no other remedy is provided hereunder, either party or the salesman may require that the dispute be submitted to and be determined by arbitration in accordance with the procedure provided for in paragraph 4 (b) hereof and that the parties and the salesman will comply with the provisions of the arbitration award. . . .
"The commission rates of this contract shall become effective on 15 day of June, 1944, and employees shall be entitled to retroactive pay from such date in accordance with the provisions of this contract. . . . The retroactivity of such salesmen shall be based on the salary of such salesmen established for them pursuant to the provisions of this contract."
Pursuant to the foregoing provisions a board of arbitration was organized upon the request of the Liquor Company, and the matter of retroactive pay was submitted to the board. The board, after hearing and computation, awarded retroactive pay to the six employees covered by the agreement from the 15th day of June, 1944, to September, 1945. No exceptions are taken to the award in any other respect than that the Liquor Company denies liability for that part of the award which allows retroactive pay to the employees concerned prior to July 1, 1945, on the ground that prior to that time the employees involved were in the employment of the Drug Company, that the Liquor Company, not having been organized until July 1, 1945, cannot be held liable on account of services rendered to the Drug Company prior to that time. *Page 63 
The board of arbitration considered this contention and made the following ruling:
"It must be remembered that during the negotiations, the union [plaintiff and respondent] was negotiating for all of the salesmen, employed by a large group of wholesale liquor dealers, throughout the state of Wisconsin. The contracts, however, after the agreement was finally consummated, were executed by the union, on one hand and with each individual employer. The contract in dispute, was signed by the union, by its business representative, and the Liquor Company, by R. K. Donovan, executive vice-president. By the expressed terms of the contract, the Liquor Company agreed to make payment to its salesmen, on a commission basis, in accordance with the terms of that contract, and to pay the salesmen the difference between what they had been paid, and what the contract provided they should have been paid from the 15th day of June, 1944, up to the date of the contract.
"Obviously, if the Liquor Company had not intended to make such payments to these employees from that date for service they had rendered to the Drug Company, they should have, and easily could have, limited their liability to the date when the Liquor Company commenced business. This they did not do, but specifically provided for payments to such date."
On the basis of this finding the award was made.
It is the contention of the Liquor Company that the arbitrators in making the award for services rendered prior to July 1, 1945, exceeded their powers, and seek to have that part of the award complained of vacated.
Under the contract entered into between the parties to this controversy we can see no reason for disturbing the conclusion of the board of arbitration. As was pointed out, if the Liquor Company did not intend to assume liability for retroactive *Page 64 
pay, why was the date June 15, 1944, inserted? The language is:
"The commission rates of this contract shall become effective on 15 day of June, 1944, and employees shall be entitled to retroactive pay from such date in accordance with the provisions of this contract."
By paragraph 15 of the contract each of the parties agreed that it would comply with the provisions of the arbitration award. It may well be, as counsel argues, that prior to the execution of the contract there was no liability on the part of the Liquor Company for retroactive pay for the period they were employees of the Drug Company. The Liquor Company is liable under its contract to make payment in accordance with its terms, although prior to the execution of the contract no legally enforceable liability may have existed against it.
By the Court. — Judgment affirmed.
MARTIN, J., took no part.